IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| TYRELL PAYNE | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: |
| LOUISVILLE LADDER INC., | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

**Parties, Jurisdiction, and Venue:**

1.

Plaintiff is a citizen of the State of Georgia who resides at 2674 Flagstone Drive SE, Atlanta, GA 30316.  Plaintiff submits himself to the jurisdiction and venue of this Court for the purposes of this civil action.

2.

Defendant Louisville Ladder Inc. ("Louisville Ladder") designs, fabricates, assembles, manufactures, tests, inspects, markets, imports, exports, and sells (directly or through distributors) ladders.  Louisville Ladder is a Delaware corporation authorized to transact business in the State of Georgia.  Defendant

Louisville Ladder may be served through its registered agent C T Corporation System, 289 S Culver Street, Lawrenceville, Georgia 30046-4805.  Defendant Louisville Ladder's principal place of business is in Louisville, Kentucky. Defendant Louisville Ladder is, therefore, a citizen of the states of Delaware and Kentucky.

3.

This Court is a proper Venue for this civil action.

4.

Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claim occurred in this district.

5.

Defendant Louisville Ladder has been properly serviced with process in this matter.

6.

This Court has Subject Matter Jurisdiction over this matter under 28 U.S.C. § 1332 because there is a complete diversity of citizenship of the parties, and the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of the interests and costs.

7.

Personal Jurisdiction is proper as to Defendant Louisville Ladder.

8.

Personal Jurisdiction of Defendant Louisville Ladder is proper because:

    a. Defendant sells substantial quality of ladders and other products into the State of Georgia

    b. This ladder was sold by Defendant to Wal-Mart with the knowledge that Wal-Mart would be selling large portions of Defendant's ladders and other products in the State of Georgia.

    c. Upon information and belief, this ladder was originally purchased by consumer Lonnie Reel at a Wal-Mart in Georgia.

    d. Toney Mitchell (Mr. Reel's nephew) took the ladder from Mr. Reel's estate in Georgia upon the death of Mr. Reel.

    e. The ladder was provided by Toney Mitchell to Plaintiff in Georgia for work to take place in Georgia.

    f. This incident occurred in Georgia.

    g. Plaintiff suffered his injuries in Georgia.

9.

Upon information and belief, Davidson Ladder Tennessee Inc. and Davidson Ladder, Inc. (collectively "Davidson Ladder") were formed in 1998 and 1985, respectively.

10.

Davidson Ladder designed, fabricated, assembled, manufactured, tested, inspected, marketed, imported, exported, and sold ladders (directly or through distributors) continuously, until 1998 when Davidson Ladder merged with Louisville Ladder.

11.

The umbrella company over Louisville Ladder, and by extension Davidson Ladder, is Grupo Cuprum, which acquired both entities in 1998.

12.

Louisville Ladder is essentially the same company as Davidson Ladder.

13.

As a result, Louisville Ladder is a legal successor to Davidson Ladder, and responsible for the liabilities of Davidson Ladder.

**The Product:**

14.

The product at issue in this matter is a six-foot (6ft) aluminum Davidson ladder, model no. W-2212-0S6, F6134-06, P/N9111 ("the Ladder" or "the at-issue Ladder").

15.

A picture of the at-issue Ladder is contained within this paragraph:



16.

The Ladder was designed, distributed, fabricated, assembled, manufactured, tested, inspected, marketed, exported, imported, and sold (directly or through distributors) by Louisville Ladder.

17.

At all relevant times herein, Louisville Ladder placed the at-issue Ladder into the stream of commerce.

18.

Ladders, such as and including the at-issue Ladder in this case, are intended

to be used by, among other individuals, construction workers, painters, craftsmen, carpenters, contractors, tradesmen, and homeowners.

19.

It is foreseeable that ladders, such as and including the at-issue Ladder in this case, will be used by those people and individuals described in the paragraph above.

20.

Ladders, such as and including the at-issue Ladder in this case, are intended to, and should, provide consumers and users reasonably safety while using said products.

21.

The utilization of a ladder, such as and including the at-issue Ladder in this case, includes the carrying of items and tools up and down a ladder for the purpose of reaching items or areas that one cannot ordinarily reach due to height.

22.

The utilization of a ladder, such as and including the at-issue Ladder in this case, as described in the paragraph above is a foreseeable use of said products.

**Operative Facts:**

23.

Plaintiff Tyrell Payne was hired or contracted for approximately one (1) day of work by Brookes Home Improvement to assist with painting Judi Moore's home, located at 2116 Meadowood Cove, Monroe, Georgia.

24.

In the course of painting Ms. Judi Moore's home on or about November 2, 2021, Plaintiff Tyrell Payne used or stepped upon the at-issue Ladder to assist with painting Ms. Judi Moore's home.

25.

While on the steps or rungs of the at-issue Ladder, the Ladder bent and – partially or wholly – collapsed, throwing Plaintiff Tyrell Payne to the ground and breaking Plaintiff Tyrell Payne's left leg.  The fracture in Plaintiff Tyrell Payne's leg spans from the upper part of his left tibia into and including his knee joint.

26.

At all relevant times, Plaintiff exercised ordinary care under the conditions and circumstances then existing.

27.

At all relevant times herein, the Ladder was being used for purposes that it

was intended and in a manner reasonably foreseeable by Defendant Louisville Ladders.

28.

Defendant Louisville Ladder designed, distributed, fabricated, assembled, manufactured, tested, inspected, marketed, exported, imported, sold (directly or through distributors), and placed into the stream of commerce the Ladder involved in the above-described incident, which then reached Plaintiff Tyrell Payne in the same, or substantially the same, condition as it was sold.

29.

The condition of the Ladder, as it was sold, made the Ladder defective and unreasonably dangerous.

30.

The Ladder presented unreasonably dangerous conditions, defects, or safety hazards that included – among other things – the possibility, and even propensity, for the Ladder to bend, break, collapse, or partially collapse under the ladder user's items, tools, and weight.

31.

Defendant Louisville Ladder knew, or should have known, that because of the unreasonably dangerous conditions, defects, or safety hazards inherent in the

ladder, the general public, or their property, was in danger of being injured by the at-issue Ladder upon the Ladder bending, breaking, or collapsing – either partial or wholly – such as what happened in the present case.

32.

Despite Louisville Ladder acquiring knowledge that the Ladder presented unreasonably dangerous conditions, defects, or safety hazards, Defendant Louisville Ladder took no steps to protect the general public, or Plaintiff in particular, from foreseeable and anticipated harm.

33.

Despite Louisville Ladder acquiring knowledge that the Ladder presented dangerous conditions, defects, or safety hazards, Defendant Louisville Ladder took no steps to warn the general public, or Plaintiff in particular, from foreseeable and anticipated harm.

34.

At the time the Ladder was manufactured, Defendant Louisville Ladder had developed and had access to alternative designs that could enhance or increase the Ladder's safety.  However, Defendant Louisville Ladder did not incorporate any of these alternative designs into the Ladder.

35.

Despite Defendant Louisville Ladder's knowledge of the Ladder's unreasonably dangerous design, Defendant Louisville Ladder continued to produce, manufacture, and test the ladder as well as market and distribute the ladder.

36.

Defendant Louisville Ladder marketed the at-issue Ladder as both durable and safe for its intended uses.  The Ladder was designed to have a long usable life and was intended to be used by people like Plaintiff to do precisely the types of things Plaintiff was doing at the time of the incident, which includes – but is not limited to – stepping upon the steps or rungs of the Ladder to reach places or areas one ordinarily cannot reach due to height.

37.

Defendant Louisville Ladder failed to adequately communicate a warning or warnings of the Ladder's known, or constructively known, dangerous conditions, defects, or safety hazards.

38.

Defendant Louisville Ladder failed to adequately communicate a warning or warnings of the Ladder's known, or constructively known, dangerous conditions,

defects, or safety hazards, because consumers and users of the at-issue Ladder, as well as those products substantially similar, were not more than likely going to read the Ladder's warning(s) or label(s) due to – among other things – their position(s), composition(s), font(s), color(s), size(s), contrast(s), use of symbol(s), location(s), and print(s).

39.

Defendant Louisville Ladder failed to adequately communicate a warning or warnings of the Ladder's known, or constructively known, dangerous conditions, defects, or safety hazards, because their warning(s) and label(s) were not expected to last the lifespan of the Ladder, and Defendant Louisville Ladder did nothing to further warn or alert consumers and users to the Ladder's dangerous conditions, defects, or safety hazards.

## COUNT I:  Negligent Failure to Warn:

40.

Defendant Louisville Ladder has a duty to warn their customers and ladder users, including Plaintiff, of any known, or constructively known, dangerous conditions, defects, or safety hazards, including – but not limited to – the possibility, and even propensity, for the ladder to bend, break, collapse, or partial collapse under the ladder user's items, tools, and weight.

41.

This duty discussed in the paragraph above extends beyond the sale of the product to the customer and ladders users, including Plaintiff, and continues to this day.

42.

Defendant Louisville Ladder has a duty to adequately communicate warnings to customers and ladder users, including Plaintiff, of any known, or constructively known, dangerous conditions, defects, or safety hazards, including – but not limited to – the possibility, and even propensity, for the Ladder to bend, break, collapse, or partial collapse under the ladder user's items, tools, and weight.

43.

Defendant Louisville Ladder's duty to adequately communicate warnings to customers and users, including Plaintiff, as described in the paragraph above, includes – but is not limited to – the duty to make and affix warnings or labels in a manner such that it is more likely than not that a customer or user will read, see, or have their attention called to said warnings or labels via – among other things – the warnings or labels' position(s), composition(s), font(s), color(s), size(s), contrast(s), use of symbol(s), location(s), and print(s).

44.

Defendant Louisville Ladder has a duty to adequately communicate warnings to customers and ladder users, including Plaintiff, of any known, or constructively known, dangerous conditions, defects, or safety hazards, including – but not limited to – the possibility, and even propensity, for the Ladder to bend, break, collapse, or partial collapse under the ladder user's items, tools, and weight. Said labels and warnings must be such that foreseeable, reasonable use as well as foreseeable climatic conditions will not prevent the warnings or labels from being adequately communicated over the course of a product(s)' expected lifespan.

45.

Defendant Louisville Ladder was negligent in breaching one or more of the duties set forth above by, among other acts and omissions:

a. Failing to warn the general public, as well as foreseeable consumers and users of the Ladder, including Plaintiff, of known, or constructively known, dangerous conditions, defects, or safety hazards, including – but not limited to – the possibility, and even propensity, for the ladder to bend, break, collapse, or partial collapse under the ladder user's items, tools, and weight.

b. Failing to adequately communicate a warning or warnings to the

13

general public, as well as foreseeable consumers and users of the Ladder, including Plaintiff, of known, or constructively known, dangerous conditions, defects, or safety hazards by – among other things – failing to create or affix warnings or labels that ensured it was more likely than not that a consumer or ladder user would read, see, or have their attention called to said warnings or labels via – among other things – the warnings' or labels' position(s), composition(s), font(s), color(s), size(s), contrast(s), use of symbol(s), location(s), and print(s).

c.  Failing to adequately communicate a warning or warnings of the Ladder's known, or constructively known, dangerous conditions, defects, or safety hazards because – among other things – the Ladder's warning(s) and label(s) were not expected to last the lifespan of the Ladder.  Defendant Louisville Ladder did nothing to further warn or alert consumers and ladder users, and particularly Plaintiff, to the Ladder's dangerous conditions, defects, or safety hazards.

46.

By breaching one or more of the duties described above, Defendant

Louisville Ladder is liable to Plaintiff Tyrrell Payne for the claim(s) of negligent failure to warn.

## COUNT II: Reckless or Wanton Design

47.

Defendant Louisville Ladder had a duty not to design or manufacture products, which includes the at-issue Ladder, in a manner that manifests a willful, reckless, or wanton disregard for life or property.

48.

Defendant Louisville Ladder's knowledge of the Ladder's unreasonably dangerous conditions, designs, defects, or safety hazards, and subsequent lack of action, arises to conduct which manifests a reckless or wanton disregard for life and property.

49.

The at-issue Ladder was unreasonably dangerous and defective at the time it was designed, fabricated, assembled, manufactured, tested, inspected, marketed, exported, imported, sold (directly or through distributors), because it was unsafe for its intended and reasonably foreseeable uses.  In placing the Ladder into the stream of commerce, Defendant Louisville Ladder exhibited reckless disregard for the life and/or property of Plaintiff, the consumers, and users of the Ladder as well

as other substantially similar products, who used their products to reach places one ordinarily cannot reach due to height by stepping upon the steps and rungs of the product with tools and other items.

50.

Defendant's conduct was willful, or so grossly negligent as to be wanton and reckless, such that Defendant may not benefit from a defense of comparative or contributory negligence, and Plaintiff is entitled to exemplary damages.

51.

By breaching one of more of the duties described above, Defendant Louisville Ladder is liable to Plaintiff Tyrrell Payne for the claim(s) of Reckless or Wanton Design.

**<u>Causation:</u>**

52.

But for Defendant Louisville Ladder's misconduct and breaches of duties, Plaintiff would not have been injured.

53.

Defendant Louisville Ladder's misconduct and breaches of their duties proximately caused the injury to Plaintiff.

16

54.

Each of the foregoing acts and omissions constitute an independent act of negligence, recklessness, or wantonness, and one, or more, of all of the acts were the direct and proximate cause(s) of the injuries and damages sustained by the Plaintiff.

**Damages:**

55.

Plaintiff's body, and his left leg in particular, are gravely injured and scarred.  He has undergone surgery where pins, bars, and clamps were placed in his left leg as result of events described herein.

56.

Plaintiff has been through hospitalizations, follow-up visits following his surgery, physical therapy, and had numerous medications administered to him at great cost as a result of the events described herein.

57.

As a result of this incident and the events described herein, Defendant missed work and, by extension, income.

58.

Plaintiff anticipates that he has incurred medical bills exceeding $250,000.00

as a result of this incident.

59.

Plaintiff's injuries and treatments are ongoing, and he continues to incur expenses, in an amount to be proven at trial.

60.

Plaintiff states his intention to seek all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

a.     Personal injuries;

b.     Past, present, and future pain and suffering;

c.     Disability;

d.     Disfigurement;

e.     Mental anguish;

f.     Loss of the capacity for the enjoyment of life;

g.     Lost Wages;

h.     Lost Future Earnings;

i.     Incidental expenses;

j.     Past, present, and future medical expenses;

k.     Permanent injuries, and

18

l.      Consequential damages to be proven at trial.

**COUNT III: Attorneys' Fees and Expenses of Litigation**

61.

Defendant Louisville tortious actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue trouble and expense such that Plaintiff is entitled to recover their necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11 as well as any other statutory or common law basis.

**COUNT IV: Punitive Damages**

62.

Defendant Louisville Ladder demonstrated gross negligence and an entire want of care evidencing a reckless indifference and conscious disregard to the consequences of its actions, which included an extreme degree of risk. Plaintiff is entitled to an award of punitive damages to deter Defendant from such conduct in the future.

63.

Defendant Louisville Ladder acted with reckless disregard for the safety and well being of the citizens of the State of Georgia, including Plaintiff.  Defendant Louisville Ladder's misconduct was reckless or wanton as defined under O.C.G.A.

§ 51-12-5.1, and showed an entire want of care which would raise the presumption of conscious indifference to consequences, in that it designed, tested, manufactured, inspected, marketed, modified, distributed, imported, exported, and sold ladders (directly or through distributors) the at-issue Ladder with knowledge of the risks to life and limb described herein.   Such conduct warrants the imposition of punitive damages against Defendant Louisville Ladders without limitation or cap.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment against Defendant Louisville Ladder for the following:

1) Plaintiff be awarded actual damages in amounts to be shown at trial;

2) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant;

3) Plaintiff be awarded attorney's fees pursuant to O.C.G.A. § 13-6-11;

4) Punitive damages be imposed on Defendant in an amount to be determined by the enlightened conscience of the jury;

5) Plaintiff be awarded a trial by jury; and

6) Plaintiff has such other relief as this Court deems just and appropriate under the circumstances.

**TRIAL BY JURY IS HEREBY DEMANDED**

This 18th day of February, 2022.

THE STODDARD FIRM

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard
Georgia Bar No. 558215
Robert F. Noens
Georgia Bar No. 193846
*Attorneys for Plaintiff*

**THE STODDARD FIRM**
1534 N. Decatur Rd. NE
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com
robert@legalhelpga.com

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing document has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the pleading was prepared using Times New Roman font, point 14.

/s/ Matthew B. Stoddard
Matthew B. Stoddard
Georgia Bar No. 558215